**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **DAINERIS MARIA BETANCOURT,** | § | |
| | § | |
| ***Petitioner*,** | § | |
| **v.** | § | |
| | § | **EP-26-CV-01176-DCG** |
| **DEPARTMENT OF HOMELAND SECURITY,** | § | |
| | § | |
| | § | |
| ***Respondent*.** | § | |

**MEMORANDUM OPINION AND ORDER**
**DISMISSING CASE WITHOUT PREJUDICE**

For the following reasons, the Court reluctantly concludes that Fifth Circuit precedent leaves the Court no choice but to **DISMISS** this case. But the Court will do so **WITHOUT PREJUDICE** to Petitioner Daineris Maria Betancourt filing a new habeas case.

## I. BACKGROUND

The Government is currently detaining Petitioner at the El Paso Processing Center pending proceedings to remove her from the United States.[1] She seeks to file a Petition for a Writ of Habeas Corpus challenging the legality of her detention.[2]

---

[1] Proposed Am. Pet. Ex. 1, ECF No. 12-3, at 1.

All page citations in this Memorandum Opinion and Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[2] Proposed Pet., ECF No. 1-1; Proposed Am. Pet., ECF No. 12-3.

Petitioner originally filed this case *pro se*.[3] She also initially sought to proceed IFP—that is, without prepaying the filing fee.[4]

**A. Petitioner's First IFP Application**

The problem, however, was that the first of Petitioner's two IFP applications (the "First IFP Application") was internally inconsistent.[5] In the space for Petitioner to disclose the "[a]verage monthly income" she earned from employment "during the past 12 months" (*i.e.*, between April 11, 2025 and April 11, 2026), Petitioner wrote "$0."[6] But in the space for Petitioner to "[l]ist [her] employment history for the past two years," Petitioner disclosed that she was employed for a substantial portion of that 12-month period.[7] Because that obviously contradicted Petitioner's claim that her average monthly income was $0,[8] the Court ordered Petitioner to:

---

[3] *See* Proposed Pet. at 8 (writing "N/A" above "Signature of Attorney or other authorized person, if any").

[4] 1st IFP Appl., ECF No. 1; *see also* 28 U.S.C. § 1915(a)(1). *But see infra* notes 18–19 and accompanying text (noting that Petitioner no longer wishes to proceed IFP and seeks to withdraw her IFP applications).

[5] *Contrast* 1st IFP Appl. at 1, *with id.* at 2. *See also infra* Section I.B (discussing Petitioner's Second IFP Application).

[6] 1st IFP Appl. at 1.

[7] *Id.* at 2 (indicating that Petitioner earned between $1,500 and $3,000 per month from employment between April 2025 and October 2025).

[8] *See supra* note 6 and accompanying text.

(1) explain the inconsistency; and

(2) show cause "why the Court shouldn't deny [the First] IFP Application and dismiss her case as a sanction for making a false statement on her Application."[9]

**B. Petitioner's Second IFP Application**

Petitioner timely responded to the Court's Order.[10] She explained that the reason she failed to accurately disclose her average monthly income was because she either "didn't underst[and] the question or didn't read it carefully."[11]

Along with that response, Petitioner also filed a Second IFP Application.[12] The Second IFP Application discloses that Petitioner's average monthly income during the last 12 months was $3,000[13]—not $0 as she previously stated.[14]

[9] Order Show Cause, ECF No. 2, at 4 (emphasis omitted); *see also infra* Section II.A–B (explaining that the IFP statute and Fifth Circuit precedent require the Court to dismiss an IFP applicant's case if the application's contents are false).

[10] Resp. Order Show Cause, ECF No. 6, at 1.

[11] *Id.*

[12] 2d IFP Appl., ECF No. 6, at 3–7.

[13] *Id.* at 3.

[14] *See supra* note 6 and accompanying text.

Largely due to the Court's extremely heavy immigration habeas caseload,[15] the Court hasn't yet ruled on either Application. Nor has the Court yet decided whether Petitioner's inaccurate statement on her First IFP Application requires the Court to dismiss her case.[16]

### C. Counsel's Appearance and Motion for Leave

After Petitioner filed her response to the Show Cause Order and Second IFP Application, an attorney appeared as Petitioner's counsel of record.[17] Counsel reports that Petitioner "no longer seeks to proceed [IFP] and will pay the applicable filing fee."[18] Counsel therefore asks the Court to "deem the pending [IFP applications] withdrawn and, in light of Petitioner's prior *pro se* response addressing the Court's concern, discharge the Order to Show Cause without dismissal or other sanction and permit this action to proceed."[19] Counsel also filed a Motion for Leave to file an Amended Petition to supersede the Proposed Petition that Petitioner drafted and filed *pro se*.[20]

---

[15] *See Valle Cerna v. Warden*, No. 3:26-CV-01338, 2026 WL 2546664, at *8 (W.D. Tex. Aug. 27, 2026) (Guaderrama, J.) (recounting that "[t]he undersigned Judge has received over 230 immigration habeas petitions since June 2025"); *see also id.* ("Without more Judges and more resources to resolve the crushing number of immigration habeas petitions that the Court's El Paso Division has received over the past year, the Court can only do its best to resolve those pending petitions as quickly as possible." (citation modified)).

[16] *But see infra* Section II.B (answering that question "yes").

[17] Notice Att'y Appearance, ECF No. 9.

[18] Renewed Mot. Leave, ECF No. 12, at 3.

[19] *Id.*

[20] *Id.* at 1–5; Proposed Am. Pet.

# II. DISCUSSION

## A. Applicable Legal Standards

To proceed IFP, a litigant must prove that prepaying the filing fee would cause her "undue hardship or deprivation of the necessities of life."[21] The IFP application form thus requires the applicant to disclose an array of information about her finances—including, as relevant here, (1) the average income she received from any source in the past 12 months; and (2) her employment history for the past two years.[22]

As goes without saying, a court can't accurately evaluate whether an IFP applicant is too poor to pay the filing fee unless she provides truthful information about her finances.[23] To that end, the IFP application form also requires the applicant to:

(1) "declare under penalty of perjury that the information" on her application "is true;" and

(2) certify that she "understand[s] that a false statement may result in a dismissal of [her] claims."[24]

To make that certification requirement enforceable, the IFP statute states: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue."[25] Several aspects of that provision are particularly noteworthy.

---

[21] *E.g.*, *Crider v. Scott*, No. 94-11024, 1995 WL 136209, at *1 (5th Cir. 1995) (per curiam).

[22] 1st IFP Appl. at 1–2.

[23] *E.g.*, *Tennial v. Madigan*, No. 11 C 3092, 2012 WL 266395, at *3 (N.D. Ill. Jan. 30, 2012) ("Providing accurate information as to an individual's salary or income is critical to proper adjudication of an [IFP] application.").

[24] 1st IFP Appl. at 1.

[25] 28 U.S.C. § 1915(e)(2).

### 1. Dismissal is Mandatory When an IFP Applicant's Allegation of Poverty is Untrue

First, the IFP statute says that "the court *shall* dismiss the case" if "the allegation of poverty is untrue."[26] That is no accident. Up until 1996, the IFP statute stated that "[t]he court . . . *may* dismiss the case if the allegation of poverty is untrue."[27] Courts interpreted the word "may" to grant judges discretion to decide whether or not to dismiss an IFP case when the applicant's allegation of poverty was untrue.[28]

Over time, however, Congress grew concerned about "the increasing number of often frivolous and harassing lawsuits brought by persons in custody."[29] "[I]n an effort to curb" that perceived deluge of litigation,[30] Congress passed the Prison Litigation Reform Act ("PLRA"),[31] which (among other things) changed "*may* dismiss" to "*shall* dismiss."[32] Thus, "[d]ismissal is [now] *mandatory* if the court determines . . . that the contents of an IFP application are false."[33]

---

[26] *Id.* (emphasis added).

[27] 28 U.S.C. § 1915(d) (1979) (emphasis added).

[28] *E.g.*, *Castillo v. Blanco*, 330 F. App'x 463, 466 n.2 (5th Cir. 2009) (per curiam).

[29] *Neal v. Clark*, No. 11-904, 2011 WL 6180027, at *1 (W.D. Pa. Dec. 13, 2011).

[30] *Id.*

[31] Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 104th Cong. §§ 801–810 (1996).

[32] *Contrast* 28 U.S.C. § 1915(d) (1979) (emphasis added), *with* 28 U.S.C. § 1915(e)(2) (1996) (emphasis added).

[33] *Nottingham v. Warden*, 837 F.3d 438, 441 (5th Cir. 2016) (emphasis added); *see also, e.g.*, *Akpulono v. McGowan*, No. 03 C 4546, 2004 WL 2973864, at *2 (N.D. Ill. Dec. 1, 2004) ("Since the statute uses 'shall,' dismissal is mandatory when the financial affidavit is false." (citation modified)).

The Court has "no discretion" to do otherwise[34]—even when "less drastic courses of action might make more practical sense."[35]

### 2. An IFP Applicant Can't Avoid Dismissal by Paying the Filing Fee

Second, the statute mandates dismissal "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid."[36] That means that even if a litigant withdraws her IFP application and pays the filing fee (as Petitioner proposes to do here),[37] the Court must still dismiss the case if her withdrawn application contained false statements about her finances.[38]

### 3. The IFP Statute Doesn't Specify Whether Dismissal Should Be With or Without Prejudice

The mandatory dismissal provision is equally notable for what it *doesn't* say. For one thing, it doesn't explicitly specify whether the dismissal should be with or without prejudice.[39] Judges have therefore generally agreed that the statute commits that decision to the court's discretion.[40] That discretion has limits, however; as the Fifth Circuit has explained, a dismissal

---

[34] *E.g.*, *Smith-Garcia v. Harrison County*, No. 1:17-cv-332, 2018 WL 2324443, at *2 (S.D. Miss. May 22, 2018), *aff'd*, 776 F. App'x 226 (5th Cir. 2019).

[35] *Rebolledo Gamez v. De Anda-Ybarra*, No. 3:26-CV-01761, 2026 WL 3075503, at *4 (W.D. Tex. Oct. 13, 2026) (Guaderrama, J.).

[36] 28 U.S.C. § 1915(e)(2).

[37] *See supra* notes 18–19 and accompanying text.

[38] *Nottingham*, 837 F.3d at 441 ("Dismissal is mandatory if the court determines 'at any time,' even after the plaintiff pays the filing fee, that the contents of an IFP application are false. A district court retains the authority to conduct reasonable investigations into the allegation of poverty even *after* the filing fee payment.").

[39] *See* 28 U.S.C. § 1915(e)(2) (stating merely that "the court shall dismiss the case"); *see also, e.g.*, *Castillo*, 330 F. App'x at 466 ("[T]he statute is silent as to whether this dismissal should be with or without prejudice . . . .").

[40] *E.g.*, *Ojose v. Youngstown State Univ.*, No. 19-3221, 2019 WL 8301664, at *2 (6th Cir. Dec. 18, 2019) ("The district court has discretion to determine whether the action is dismissed with or without prejudice."); *Akpulono*, 2004 WL 2973864, at *2 (similar).

with prejudice "is an extreme sanction that should only be imposed when evidence exists of bad faith, manipulative tactics, or litigiousness."[41]

#### 4. Courts Haven't Agreed What it Means for an "Allegation of Poverty" to be "Untrue"

Most importantly for the purposes of this opinion, the statute also doesn't define what it means for an "allegation of poverty" to be "untrue."[42] As the Court now explains, most Circuits have interpreted the statute to mandate dismissal only when an IFP applicant deliberately misrepresents her finances—especially where truthful financial disclosures would have revealed that the applicant is ineligible to proceed IFP. The Fifth Circuit, however, has taken a much stricter approach.

##### a. Several Circuits Require a Deliberate Misrepresentation or Bad Faith as a Prerequisite to Dismissal

For instance, the Seventh Circuit has reasoned that because "the penalty for an 'untrue' allegation of poverty is not simply an order requiring full payment, but instead is dismissal of the entire action," Congress must have intended "untrue" to mean "something like 'dishonest' or 'false,' rather than simply 'inaccurate.'"[43] So, under Seventh Circuit precedent, "dismissal is proper only if the [applicant] *deliberately* misrepresents" her financial condition.[44] An "inadvertent" inaccuracy "is not enough" to mandate dismissal.[45]

---

[41] *Lay v. Justices-Middle Dist. Ct.*, 811 F.2d 285, 286 (5th Cir. 1987) (applying the prior version of the statute); *Castillo*, 330 F. App'x at 466 (applying that same rule under the current version of the statute).

[42] *See* 28 U.S.C. § 1915(e)(2)(A); *see also, e.g.*, *Robertson v. French*, 949 F.3d 347, 351 (7th Cir. 2020) ("The [statute] does not define the word 'untrue' . . . .").

[43] *Robertson*, 949 F.3d at 351.

[44] *Id.* at 352 (emphasis added).

[45] *Id.* at 354.

The Ninth Circuit has similarly held that "a showing of bad faith is required" to trigger dismissal—"not merely inaccuracy."[46] Likewise, the Second Circuit has concluded that the IFP statute does not "require[] dismissal for inaccuracies, misstatements, or minor misrepresentations made in good faith."[47]

**b. Other Circuits Focus Not on Whether the IFP Application is Inaccurate, But Rather on the Applicant's IFP Eligibility**

Other Circuits focus less on whether the IFP application is inaccurate and more on whether the applicant would have been eligible to proceed IFP had she accurately disclosed her finances in the first place. The Eighth Circuit, for instance, has opined that the mandatory dismissal provision's purpose "is to weed out the litigants who falsely understate their net worth in order to obtain [IFP] status when they are not entitled to" it.[48] Eighth Circuit precedent therefore holds a court shouldn't dismiss an IFP case merely because "certain assertions in [the IFP application] are untrue;" instead, dismissal is appropriate only if the applicant "is not sufficiently poor to qualify for [IFP] status given the facts that *are* true."[49] Thus, so long as an applicant's misstatements on his IFP application "were made in good faith," dismissal "must be

---

[46] *Escobedo v. Applebees*, 787 F.3d 1226, 1234 n.8 (9th Cir. 2015).

[47] *Vann v. Comm'r of N.Y. City Dep't of Corr.*, 496 F. App'x 113, 115 (2d Cir. 2012).

[48] *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000) (citation modified).

[49] *Id.* (emphasis added).

based on whether his *allegation of poverty* is true"—"not on whether he misstated his assets" in his application.[50] Eleventh Circuit caselaw is similar.[51]

### c. The Fifth Circuit's Interpretation Diverges From Other Circuits

But this Court isn't bound by the precedent of those Circuits; it must follow the Fifth Circuit. And the Fifth Circuit has interpreted the IFP statute much more stringently.

#### i. A False Statement Mandates Dismissal Even if the Applicant Would Otherwise Be Eligible for IFP Status

In *Lay v. Justices-Middle District Court*, for instance, the appellant drafted an IFP application that accurately disclosed the amount of money in his prison account balance.[52] Because the prison's accounts supervisor delayed in signing an affidavit attesting that the appellant's disclosure was truthful, however, the appellant forged the supervisor's signature and filed it with the court.[53]

The Fifth Circuit acknowledged that the "appellant's statement of his account balance" was "accurate"—and, thus, that "in a strict sense, his allegation of poverty was true."[54] Yet the Fifth Circuit nonetheless concluded that the IFP statute's "*untrue*" "allegation of poverty"

---

[50] *Id.*

The Eighth Circuit's approach thereby differs from that of the Seventh Circuit, which holds that a deliberate falsehood on an IFP application mandates dismissal even if the applicant would have qualified for IFP status anyway. *See Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016) ("Although the district judge might have granted the plaintiff's [IFP] petition even if he'd disclosed his separate trust account, hiding assets is not a permissible alternative to seeking the judge's assistance. An applicant has to tell the truth . . . . The appeal is thus doomed by [the IFP statute's mandatory dismissal provision].").

[51] *See, e.g.*, *Daker v. Warren*, No. 20-12296, 2023 WL 4560224, at *6 (11th Cir. July 17, 2023); *Daker v. Head*, No. 19-13101, 2022 WL 2903410, at *2–4 (11th Cir. July 22, 2022).

[52] 811 F.2d at 285–86.

[53] *Id.* at 285.

[54] *Id.* at 286.

provision authorized[55] dismissal as a sanction for the forgery.[56] Rather than focusing on whether the appellant had "falsely understate[d] [his] net worth to obtain IFP status" when he was "not entitled" to it (as other Circuits have done),[57] the Fifth Circuit was primarily interested in protecting "the district court's . . . integrity and the integrity of the privilege of proceeding [IFP]."[58] Thus, even though the affidavit truthfully indicated that the appellant was too poor to pay the filing fee, the Fifth Circuit upheld the dismissal.[59]

Therefore, "[i]n the Fifth Circuit, dismissal under the IFP statute is predicated on the submission of false allegations" in the IFP application—not on "the litigant's actual financial status."[60] In other words, "courts in this circuit must dismiss a case based on a finding that the

---

[55] The Court says "authorized" (rather than "mandated") because *Lay* arose under the prior version of the IFP statute, under which dismissal for an untrue allegation of poverty was discretionary rather than mandatory. *See id.* at 285; *see also supra* Section II.A.1.

Other than *Lay*'s statement that district courts have "*discretion* to dismiss the case if the allegation of poverty is untrue," *see* 811 F.2d at 285 (emphasis added), *Lay* remains good law in the Fifth Circuit. *See Castillo*, 330 F. App'x at 467 n.2 (continuing to rely on other portions of *Lay* after Congress amended the statute in 1996).

[56] 811 F.2d at 286.

[57] *See Head*, 2022 WL 2903410, at *2; *see also supra* Section II.A.4.b.

[58] *See* 811 F.2d at 286.

[59] *See id.*

[60] *Bucklew v. St. Clair*, No. 3:18-CV-2117, 2019 WL 2250886, at *2 (N.D. Tex. May 15, 2019), *report and recommendation accepted by* 2019 WL 2249718 (N.D. Tex. May 24, 2019); *Castillo v. Guerra*, No. 7:23-CV-129, 2024 WL 3851222, at *2 (S.D. Tex. July 17, 2024), *report and recommendation accepted by* 2024 WL 3855687 (S.D. Tex. Aug. 15, 2024); *De La Miya v. 14th Jud. Dist. Ct.*, No. 2:24-cv-01012, 2024 WL 5228642, at *1 (W.D. La. Nov. 25, 2024), *report and recommendation accepted by* 2024 WL 5227434 (W.D. La. Dec. 26, 2024).

contents of an IFP application are false, even if the litigant would still qualify as a pauper."[61] That's the polar opposite of the Eighth and Eleventh Circuits' approach, which focuses "not on whether [the applicant] misstated his assets in his" IFP application, but rather on whether the applicant would have qualified for IFP status if he had accurately disclosed his finances.[62]

#### ii. A False Statement Mandates Dismissal Irrespective of the Applicant's Subjective Intent

Nor does it appear that bad faith or intent to deceive is a prerequisite to dismissal in the Fifth Circuit. Consider *Lay*, for instance. After concluding that the appellant's forgery warranted dismissal, the Fifth Circuit proceeded to consider whether the dismissal should have been with or without prejudice.[63] The court explained that dismissal with prejudice "is an extreme sanction that should only be imposed when evidence exists of bad faith, manipulative tactics, or litigiousness."[64] The court further determined that the existing record didn't "support the extreme sanction of dismissal with prejudice"—in other words, that the existing record didn't

---

[61] *Bucklew*, 2019 WL 2250886, at *2; *De La Miya*, 2024 WL 5228642, at *1; *see also Ramirez v. United States*, No. 5:25-CV-167, 2026 WL 1970377, at *1 (S.D. Tex. June 16, 2026) (similar), *report and recommendation accepted by* 2026 WL 1967087 (S.D. Tex. July 7, 2026); *Van Horne v. Haag*, No. 1:23-CV-00240, 2024 WL 2000695, at *4 (N.D. Tex. Apr. 18, 2024) (noting that a misrepresentation on an IFP application "may warrant dismissal even where the plaintiff would be still entitled to IFP had they told the truth in the first instance"), *report and recommendation accepted by* 2024 WL 2001565 (N.D. Tex. May 6, 2024).

To the extent some Judges in this Circuit have reached the contrary conclusion, the Court respectfully finds those cases unpersuasive. *See Hunter v. Tex. Energy Servs. LP*, No. 2:14-CV-142, 2014 WL 5426454, at *3 (S.D. Tex. Oct. 23, 2014) (adopting the Eighth Circuit's contrary approach without citing or acknowledging the Fifth Circuit's binding opinion in *Lay*); *Stancu v. Hyatt Corp./Hyatt Regency Dall.*, No. 3:18-cv-1737, 2021 WL 2003992, at *4–5 (N.D. Tex. Apr. 30, 2021) (acknowledging contrary authority citing *Lay*, but declining to follow it and opting to follow Eighth Circuit precedent instead), *report and recommendation accepted by* 2021 WL 1966877 (N.D. Tex. May 17, 2021).

[62] *See Lee*, 231 F.3d at 459; *see also supra* Section II.A.4.b.

[63] 811 F.2d at 286.

[64] *Id.*; *see also supra* note 41 and accompanying text.

indicate that the appellant had engaged in bad faith by submitting a forged affidavit.[65] Even without a finding of bad faith, however, the court readily agreed that the existing record supported a "dismissal *without* prejudice."[66] That implies that while the absence of bad faith may save an IFP applicant from a dismissal *with prejudice*, it won't save a litigant from dismissal *altogether*.

Now consider *Castillo v. Blanco*, where the defendants "presented an abundance of evidence that" the plaintiff failed to divulge "numerous undisclosed sources of income" in his IFP application.[67] Although the Fifth Circuit upheld the dismissal of the lawsuit, it did so without explicitly finding that the plaintiff had acted in bad faith.[68] The court mentioned "bad faith" only when discussing the circumstances in which a dismissal *with prejudice* is appropriate under the IFP statute: namely, "when 'evidence exists of bad faith, manipulative tactics, or litigiousness.'"[69] Because the court determined that plaintiff's litigiousness sufficed to support a dismissal with prejudice by itself, the court didn't proceed to inquire whether the plaintiff had

---

[65] 811 F.2d at 286.

The court did, however, "remand the case to the district court for reconsideration consistent with [its] opinion." *Id.* The panel implied that the district court was free to "inquire[] into the details of the forgery" on remand. *See id.* That suggests that if the district court had found evidence of bad faith on remand, and the appellant had sought to appeal that finding, the Fifth Circuit might have been willing to uphold a dismissal *with* prejudice.

[66] *Id.* (emphasis added).

[67] 330 F. App'x at 467.

Although *Castillo* is an unpublished opinion (and therefore non-binding), *see* 5TH CIR. R. 47.5.4, the Fifth Circuit subsequently described *Castillo* as "persuasive" in a published, binding decision. *Nottingham*, 837 F.3d at 441 n.7.

[68] *See* 330 F. App'x at 467.

[69] *See id.* at 466 (quoting *Lay*, 811 F.2d at 466); *see also supra* notes 41, 64, and accompanying text.

also engaged in bad faith.[70] Thus, *Castillo* reinforces that the IFP statute mandates dismissal irrespective of whether the applicant acted in bad faith; bad faith is only relevant to whether the dismissal should be *with or without prejudice*.

Finally, consider *Nottingham v. Warden*, which states that "dismissal is *mandatory* if the court determines . . . that the *contents* of an IFP application are false."[71] Nothing about that formulation of the legal standard is conditioned on whether the IFP applicant acted in bad faith or subjectively intended to deceive the court; all that matters is whether the application contains "contents" that "are false."[72]

That all suggests that a false disclosure in an IFP application alone suffices to trigger the IFP statute's mandatory dismissal provision—irrespective of whether that inaccuracy resulted from an inadvertent mistake or an intentional misrepresentation. An applicant's bad faith is only relevant to whether the court should dismiss the case *with prejudice*—not to whether the court should dismiss the case *at all*. That's contrary to the law of the Second, Seventh, and Ninth Circuits, where bad faith or intent to deceive are necessary prerequisites to dismissal.[73]

**B. Fifth Circuit Precedent Requires the Court to Dismiss this Case**

It follows that Fifth Circuit precedent leaves the Court no choice but to dismiss this case. At least some of the "contents" of Petitioner's First IFP Application are "false,"[74] since the

---

[70] *See* 330 F. App'x at 467 ("The district court correctly dismissed Castillo's claims with prejudice. In his appellate brief, Castillo admits that he is a frequent litigator with dozens of open cases throughout the state . . . . This is clear evidence of litigiousness, which under *Lay* warrants a dismissal with prejudice." (citation modified)).

[71] 837 F.3d at 441 (emphases added); *see also supra* Section II.A.1.

[72] *See* 837 F.3d at 441.

[73] *See supra* Section II.A.4.a.

[74] *See Nottingham*, 837 F.3d at 441.

Application incorrectly states that Petitioner made no money between April 11, 2025 and April 11, 2026 when she actually earned as much as $3,000 per month for much of that period.[75] Although the Court credits Petitioner's assertion that the misstatement resulted from an inadvertent error rather than a deliberate attempt to understate her income,[76] dismissal is mandatory regardless.[77]

Nor does it matter that Petitioner may well have qualified for IFP status if her First IFP Application had been completely accurate.[78] What matters under Fifth Circuit precedent is that the Application's contents are false—not whether Petitioner would have been eligible to proceed IFP if she had accurately disclosed her income in the first place.[79]

Finally, Petitioner can't avoid dismissal by withdrawing her IFP applications and paying the filing fee (as she proposes to do).[80] Again, the court must "dismiss the case *at any time*" if "the allegation of poverty is untrue," "[n]otwithstanding any filing fee . . . that may have been

---

[75] *Contrast* 1st IFP Appl. at 1–2, *with id.* at 2, *and* 2d IFP Appl. at 3–4. *See also supra* Section I.A.

[76] Resp. Order Show Cause at 1; *see also supra* note 11 and accompanying text.

[77] *See supra* Section II.A.4.c.ii.

The inadvertent nature of Petitioner's misstatement is relevant to whether the Court dismisses this case *with or without prejudice*, however. *See supra* Section II.A.4.c.ii; *see also infra* Section II.D (opting to dismiss this case without prejudice).

[78] While the Court needn't (and doesn't) decide whether Petitioner would have qualified for IFP status if she hadn't submitted false information in her First IFP Application, the Court notes that the Second IFP Application indicates that Petitioner earned no income since October 2025, has no money in cash or in a bank account, and owns no assets of value. 2d IFP Appl. at 3–5.

[79] *See supra* Section II.A.4.c.i.

[80] *See supra* notes 18–19 and accompanying text.

paid."[81] Simply put, "the contents of" Petitioner's First IFP Application "are false," so "[d]ismissal is mandatory."[82]

### C. The Fact That the First IFP Application is Merely Internally Inconsistent Doesn't Preclude Dismissal

The fact that the First IFP Application is *internally* inconsistent—as opposed to inconsistent with evidence *external* to the Application—doesn't change the Court's conclusions.

As background, courts regularly dismiss cases when an IFP applicant's financial disclosures contradict information *outside* the application's four corners, such as allegations in the applicant's pleadings,[83] documents the applicant filed in other cases,[84] public tax and

---

[81] 28 U.S.C. § 1915(e)(2) (emphasis added); *see also supra* Section II.A.2.

[82] *Nottingham*, 837 F.3d at 441.

[83] *See, e.g.*, *Salat v. Wilson*, No. 2:16-cv-3018, 2017 WL 4269958, at *1–3 (D. Nev. Sep. 26, 2017) (recommending dismissal where plaintiff's proposed complaint indicated that he owned a Mercedes that he failed to disclose in his IFP application), *report and recommendation accepted by* 2017 WL 5615572 (D. Nev. Nov. 21, 2017); *Rebolledo Gamez*, 2026 WL 3075503, at *2–3 (dismissing case where petitioner failed to explain inconsistencies between the information about his employment history in his proposed petition and the income disclosures in his IFP application).

[84] *See, e.g.*, *Bucklew*, 2019 WL 2250886, at *1–4 (recommending dismissal where the financial information in the plaintiff's IFP application contradicted financial disclosures she made in her bankruptcy case and a state criminal proceeding); *McClafferty v. Portage Cnty., Ohio Bd. of Comm'rs*, No. 21-3335, 2021 WL 5755631, at *4–5 (6th Cir. Dec. 3, 2021) (affirming dismissal where the plaintiff's filings in an earlier case indicated that he made over a million dollars from a cryptocurrency transaction that he failed to disclose on his IFP application).

property records,[85] or other evidence in the evidentiary record.[86] That makes perfect sense. Suppose, for instance, that a plaintiff files an IFP application saying he doesn't own a vehicle. Suppose also that, along with that IFP application, the plaintiff files a proposed complaint accusing his insurer of unlawfully denying his auto insurance claim and attaches vehicle registration records showing that he owns a Mercedes.[87] In a situation like that, it's reasonable to infer that the plaintiff knew perfectly well that he owned a valuable asset and purposely (or carelessly) failed to disclose it on his IFP application.

But Petitioner's First IFP Application isn't inconsistent with anything outside the Application's four corners; instead, it's inconsistent with itself.[88] Again, Page 2 of the

---

[85] *See, e.g.*, *Bell v. Iozzo*, No. 22-CV-10888, 2023 WL 6811771, at *1–3 (S.D.N.Y. Oct. 16, 2023) (dismissing case where property tax records revealed that the plaintiff owned real property that he failed to disclose on his IFP application).

*But see Pyle v. Glen Cnty. Sheriff's Dep't*, No. 2:24-cv-02940, 2025 WL 1412642, at *1 (E.D. Cal. Apr. 25, 2025) (although plaintiff's complaint indicated he owned real property that he failed to disclose in his IFP application, court gave plaintiff "an opportunity to file an amended IFP application," reasoning that he "may have erred in filling out his" initial application); *Brooks v. Keolis Transit Am., LLC*, No. 2:24-cv-00900, 2024 WL 7112652, at *1 (D. Nev. May 24, 2024) (denying IFP application where "a public records search reveal[ed]" that the plaintiff owned a car that she failed to disclose on her application, but nonetheless giving the plaintiff "another opportunity to file" a corrected application).

[86] *See, e.g.*, *Humbach v. Canon*, No. 13-CV-2512, 2019 WL 1369464, at *3–5 (S.D.N.Y. Mar. 26, 2019) (dismissing case where "evidence in the [summary judgment] record, including Plaintiff's own sworn statements in her deposition," revealed "that Plaintiff provided untrue statements on her [IFP] application in bad faith").

[87] *See Salat*, 2017 WL 4269958, at *2–3 (involving exactly that fact pattern).

[88] One might say that the First IFP Application is "inconsistent with something outside the Application's four corners" because it contradicts the *Second* IFP Application that Petitioner filed to correct the discrepancy in the First. *Contrast* 1st IFP Appl. at 1, *with* 2d IFP Appl. at 3. *See also supra* notes 13–14 and accompanying text.

That's not the sort of external inconsistency that the above-cited cases contemplate, *see supra* notes 83–86 and accompanying text, but the Court needn't tarry over that point. It suffices to say that if one accepts that the First IFP Application is merely internally inconsistent (as opposed to inconsistent with information outside the First IFP Application itself), that still wouldn't save this case from dismissal. *See infra* notes 96–100 and accompanying text.

Application truthfully discloses that Petitioner made between $1,500 and $3,000 per month from employment between April 2025 and October 2025,[89] while Page 1 erroneously states that Petitioner made no money from employment during that period.[90] Thus, while the Application is partly false, it's also partly true. And it's unlikely that Petitioner was trying to deceive the Court when she misstated her income on Page 1; if she was, she probably wouldn't have accurately disclosed her prior employment income on the very next page.

Courts across the Circuits have overwhelmingly treated *internally* inconsistent IFP applications differently than applications that contradict *external* evidence or information.[91] That is, courts faced with *self*-contradictory IFP applications generally haven't dismissed the case outright—instead, they've usually denied the application without prejudice to the applicant filing a new application that corrects the inconsistency (or, alternatively, paying the filing fee).[92]

---

[89] 1st IFP Appl. at 2; *see also* 2d IFP Appl. at 3–4 (confirming that information is truthful).

[90] 1st IFP Appl. at 1; *see also* 2d IFP Appl. at 3 (correcting that misstatement).

[91] *See infra* notes 92–95 and accompanying text.

[92] *See, e.g.*, *Brewington v. Aramark Mgmt. Servs., L.P.*, No. 26-2928, 2026 WL 2922805, at *2 (D.N.J. Sep. 28, 2026) ("Plaintiff's IFP Application is internally inconsistent. Courts deny IFP applications with inconsistent information. Here, Plaintiff claims he makes an average of $5,000 per month from Instacart, but omits Instacart from his employment history. . . . Plaintiff's IFP Application is denied without prejudice to his ability to refile a complete and consistent application." (emphases and citations omitted)); *Maleka-Ndandu v. Elite Sec. Staffing*, No. 23-cv-1100, 2023 WL 4611829, at *1–2 (S.D. Cal. July 18, 2023) ("[The plaintiff's IFP application] is self-contradictory because it suggests both that during the past twelve months [he] did not earn any employment income, and that he was grossing $1,500 per month from employment until February 28, 2023. . . . Because [the IFP application is] self-contradictory, [it] is denied with leave to amend." (emphases and citations omitted)); *Peeples v. Xlibris Publ'g*, No. 19-0070, 2019 WL 13379532, at *3 (S.D. Ala. Feb. 22, 2019) ("[I]t appears that Plaintiff receives $771.00 monthly in SSI benefits and, yet, when given the opportunity to 'report' those benefits, Plaintiff specifically identified $0. This internal inconsistency must be corrected in a new motion . . . . [The IFP application] is denied; provided, however, Plaintiff may file an entirely new IFP motion . . . which corrects the deficiencies noted herein . . . ." (emphases and citations omitted)); *Gumbayan v. Lockhart, Morris, & Montgomery, Inc.*, No. 3:25-cv-179, 2025 WL 5319701, at *1 (M.D. Fla. Apr. 25, 2025) (similarly denying internally inconsistent IFP application without prejudice to filing an amended application or paying the filing fee).

Where courts have denied self-contradictory IFP applications *with* prejudice and/or dismissed the case altogether, that's typically been because:

(1) the applicant's proposed complaint failed to state a cognizable claim (rather than because the court deemed the internal inconsistency to be an untrue allegation of poverty that mandated dismissal);[93] or

(2) the application was *both* internally inconsistent *and* inconsistent with external evidence.[94]

Indeed, at least one court has *granted* a self-contradictory IFP application because the court was still able to assess the applicant's financial condition despite the internal inconsistency.[95]

The Court concludes, however, that it must respectfully depart from that body of authority. For one thing, many of the above-cited cases are from Circuits that have adopted a much more permissive interpretation of the IFP statute (like the Ninth and the Eleventh).[96] In the

---

[93] *See, e.g.*, *Shapiro v. United States*, No. 18 CV 04070, 2018 WL 11612100, at *1 (N.D. Ill. Oct. 25, 2018) ("[The IFP application] is denied because it is internally inconsistent. Specifically, Shapiro avers that he is employed yet claims to receive no income. . . . Ordinarily, the Court would afford Shapiro an opportunity to submit a revised [IFP application], but in view of the plainly frivolous nature of the complaint . . . Shapiro's complaint should be dismissed with prejudice.").

*See also* 28 U.S.C. § 1915(e)(2) (requiring the court to "dismiss [an IFP] case at any time if the court determines that (A) the allegation of poverty is untrue; *or* (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." (emphasis added)).

[94] *See Bell v. Gray*, No. 20 Civ. 1588, 2022 WL 4617014, at *3–4 (S.D.N.Y. Sep. 30, 2022) (observing that the plaintiff's IFP application wasn't just "internally inconsistent;" it also contradicted "his own submissions" in the case).

[95] *See Finkley v. Cornucopia Logistics, LLC*, No. 25cv16300, 2026 WL 2524258, at *3–4 (D.N.J. Aug. 26, 2026) ("The Renewed IFP Application contains some internal inconsistencies, but it provides enough information for the Court to evaluate Plaintiff's financial condition. . . . The Court will therefore grant the Renewed IFP Application . . . ." (emphases and citations omitted)).

Although the *Finkley* court ultimately dismissed the case without prejudice, that too was because the plaintiff's complaint failed to state a cognizable cause of action—not because the plaintiff had made an untrue allegation of poverty. *See id.* at *4–6.

[96] *See* the cases cited *supra* notes 92–93; *see also supra* Sections II.A.4.a–b.

Fifth Circuit, however, "[d]ismissal is mandatory if . . . the contents of an IFP application are false"—period.[97] Thus, it doesn't matter that the contents of Petitioner's First IFP Application are partly true[98]—a statement that's only partly false is still a false statement.[99]

Furthermore, none of the above-cited cases analyze why an *external* inconsistency amounts to an "untrue" "allegation of poverty" under the IFP statute, but an *internal* inconsistency does not.[100] Absent any indication that the Fifth Circuit would adopt that analytical distinction, the Court will not do so here. Thus, the fact that Petitioner's First IFP Application is merely internally inconsistent doesn't preclude dismissal.

**D. The Court Will Dismiss the Case Without Prejudice**

But none of that means the Court must dismiss this case *with prejudice*. There's no "evidence . . . of bad faith, manipulative tactics, or litigiousness" here;[101] again, the Court credits Petitioner's explanation that that the error resulted from a good faith mistake.[102] After all, if *submitting a forged affidavit* doesn't automatically qualify as "bad faith" under Fifth Circuit precedent,[103] then the minor inconsistency here surely doesn't justify a dismissal with prejudice either.

---

[97] *Nottingham*, 837 F.3d at 441.

[98] *See supra* notes 89–90 and accompanying text.

[99] *Cf. Williams v. Mielle Organics LLC*, No. 24-cv-12763, 2025 WL 2734578, at *4 (N.D. Ill. Sep. 25, 2025) ("Falsity is baked into a half-truth—that's why it is called a half-truth, not a whole-truth. The other half of a half-truth is a half *un*truth. Another name for a half-untruth is a false statement." (citation modified)).

[100] *See* the cases cited *supra* notes 92–93 and 95.

[101] *See Castillo*, 330 F. App'x at 466 (citation modified).

[102] *See supra* notes 11, 76, and accompanying text.

[103] *See Lay*, 811 F.2d at 286; *see also supra* note 65 and accompanying text.

The Court will therefore dismiss this case *without* prejudice to Petitioner filing a new habeas case.[104] Happily, if Petitioner does so, she'll be in essentially the same place she would be if the Court granted her pending Motion to withdraw her IFP Applications and file an Amended Petition.[105] Either way, Petitioner will have an open habeas case on the docket, with her Amended Petition as the operative pleading.

The reader may therefore be wondering: If Petitioner will effectively end up in the same place either way, what's the point of all this rigmarole? Why dismiss Petitioner's case and put her through the trouble of filing a new one? Why not just deem her IFP Applications withdrawn, order her to pay the filing fee, docket her Amended Petition as the operative pleading in this case, and let the litigation proceed under the existing case number?

Because the Court can't. As stated, Congress deliberately amended the IFP statute to strip courts of discretion to refuse to dismiss a case where the applicant's allegation of poverty is untrue.[106] The Court has no authority to disregard that legislative judgment.[107] And the Court is

---

[104] *See Rebolledo Gamez*, 2026 WL 3075503, at *3 (similarly dismissing case without prejudice where it appeared that the petitioner "submitted false information not because he was trying to purposely mislead the Court, but rather because he didn't fully understand the questions on the IFP form").

[105] *See supra* Section I.C.

[106] *See supra* Section II.A.1.

[107] *See Rebolledo Gamez*, 2026 WL 3075503, at *4 ("The Court recognizes that dismissing this case without prejudice and requiring Petitioner to refile it from scratch is inefficient for both Petitioner and the Court. It would be easier if the Court kept this case open, denied Petitioner's IFP Application, and ordered him to pay the filing fee. It would also be more efficient to deny Petitioner's IFP Application without prejudice and order him to file a corrected application that contains accurate information about his finances. . . . The Court concludes, however, that it has no flexibility to impose a lesser sanction than dismissal. Again, the IFP statute says that the court *shall* dismiss the case if the allegation of poverty is untrue. That means dismissal is *mandatory* if the contents of an IFP application are false. The Court cannot disregard that statutory language (or the binding Fifth Circuit precedent interpreting it). The Court must therefore dismiss the case—even though less drastic courses of action might make more practical sense here." (citation modified)).

equally powerless to disregard Fifth Circuit caselaw indicating that Petitioner triggered that mandatory dismissal provision by misstating her average monthly income.

### E. Parting Thoughts

While the Court is confident that it has faithfully interpreted Fifth Circuit precedent as it currently stands, it's certainly possible that this Court has read the caselaw overbroadly and reached a harsher result than the Fifth Circuit contemplated or intended. If so, the Fifth Circuit is of course free to clarify why its prior statements in *Lay*, *Castillo*, and *Nottingham* don't dictate the result that this Court reaches today.

## III. CONCLUSION

The Court therefore **DISMISSES** the above-captioned case **WITHOUT PREJUDICE** to Petitioner filing a new habeas case.

The Court **DENIES** all pending motions in this case as **MOOT**.

The Court will separately issue a final judgment closing the case.[108]

**So ORDERED and SIGNED this 26th day of October 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

[108] *See* FED. R. CIV. P. 58(a) ("Every judgment . . . must be set out in a separate document . . . ."); FED. R. CIV. P. 58(b)(1) (requiring the Court to "promptly prepare, sign, and enter the judgment when . . . the court denies all relief").